# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LOUIE JIMENEZ III, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>LAND O'LAKES, INC., a Minnesota corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:23-cv-00891-JLT-SKO<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. 28) |

Jose Louie Jimenez III alleges that Defendant Land O'Lakes, Inc. violated the Unfair Competition Law and several provisions of the California Labor Code, including provisions related to rest breaks, meal breaks, overtime pay, timely and accurate wages, and timely payment of wages upon termination. (Doc. 1 at ¶ 20.) Plaintiff filed this action in Tulare County Superior Court on behalf of himself and similarly situated employees in California. Defendant removed the suit to this Court under the Class Action Fairness Act of 2005 (CAFA). (Doc. 1.) Plaintiff requests remand of this action, claiming, among other things, that the amount-in-controversy requirements under CAFA is not satisfied. (Docs. 11, 15.) Defendant maintains the Court has jurisdiction under CAFA. (Doc. 13.) For the reasons set forth below, Plaintiff's motion to remand is **DENIED**.

## I.   INTRODUCTION

### A. Background

Plaintiff was employed by Land O'Lakes as a "technician," which was classified as a non-

1

exempt position.  (Doc. 1-1 at ¶ 13.)  He was employed by Defendant from about August 2013 to April 2022.  (Doc. 1 at ¶ 11.)  Plaintiff initiated this action in Tulare County Superior Court.  (Doc. 1-1 at 3.)  He seeks to state claims on behalf of a class defined as: "All persons who worked for any[1] Defendant in California as an hourly, nonexempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent."  (*Id.* at ¶ 23.)  Plaintiff alleges that Defendant had (1) failed to pay minimum wages for all hours worked; (2) failed to pay overtime wages; (3) failed to provide meal breaks; (4) failed to authorize and permit rest breaks; (5) failed to indemnify necessary business expenses; (6) failed to timely pay the wages of discharged employees (i.e., "waiting time" penalties); (7) failed to provide and maintain accurate wage records; and (8) violated Cal. Bus. & Prof. Code §§ 17200, *et seq*.  (*Id*. at ¶¶ 30–94.)

### B. Procedural History

After Plaintiff filed this class action in Tulare County Superior Court (Doc. 1-1 at 3), Defendant removed the instant action to this Court pursuant to the Class Action Fairness Act.  (Doc. 1.)  Defendant asserts that the parties are diverse, in that Plaintiff is a resident of California and Land O'Lakes is deemed a citizen of Minnesota.  (*Id*. at ¶¶ 29–34.)

Plaintiff seeks to have the case remanded back to state court, asserting that Defendant failed to submit competent evidence to support removal, and that the amount-in-controversy requirement is not satisfied.  (Doc. 11.)  Defendant opposes Plaintiff's motion for remand and provides revised amount-in-controversy calculations through its expert, Ariel Kumpinsky.  (Docs. 13, 13-4.)  In reply, Plaintiff maintains that the evidence and calculations submitted thus far are flaws and insufficient to support diversity jurisdiction under CAFA.  (Doc. 15.)

## II.    LEGAL STANDARD

### A. Rule 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter,

---

[1] Presumably, the inclusion of the word "any" is a typo, since there is only one defendant named in this action.

2

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

This plausibility inquiry is a "context-specific task that requires [this Court] to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and "'draw all reasonable inferences in favor of the nonmoving party[,]'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Conclusory allegations and unreasonable inferences," however, "do not provide [] a basis" for determining a plaintiff has plausibly stated a claim for relief. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted).

**B. CAFA**

Under the Class Action Fairness Act of 2005, federal courts have original jurisdiction "over certain class actions, defined in 28 U.S.C. § 1332(d)(1), the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress enacted CAFA to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts.'" *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) (quoting *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010)). The Supreme Court held there is "no presumption against removal jurisdiction [under CAFA] and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89).

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citation omitted). A defendant seeking removal must file "a notice of removal 'containing a short and plain statement of the grounds for removal. . .'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)). "'[When] a defendant seeks

3

federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.' '[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,'" and "need not contain evidentiary submissions.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924–25 (9th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 87–89; *Ibarra*, 775 F.3d at 1197); *see also* 28 U.S.C. § 1446(c)(2) (with certain exceptions, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy"). When a removing defendant shows recovery that could exceed $5 million, "and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Arias*, 936 F.3d at 927 (internal quotation marks and citation omitted).

"Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89. If evidence is required, "[b]oth parties may submit evidence supporting the amount in controversy before the district court rules." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). Nonetheless, the removing party bears the ultimate burden of showing "by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197. This burden may be satisfied by submitting "affidavits or declarations, or other 'summary judgment-type evidence relevant to the amount in controversy at the time of removal,'" or by relying on reasonable assumptions. *Id.*; *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015); *see also Arias*, 936 F.3d at 925 ("[a]n assumption may be reasonable if it is founded on the allegations of the complaint."). Removal is proper "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 88 (citations omitted).

The amount in controversy is *not* the amount of damages that the plaintiff will likely recover, *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor is it "a prospective assessment of defendant's liability," *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010). Rather, it "is simply an estimate of the total amount in dispute." *Id.* Thus,

4

1  the amount on controversy merely "reflects the maximum recovery the plaintiff could reasonably

2  recover." *Arias*, 936 F.3d at 927.  To determine the amount in controversy for CAFA purposes,

3  the claims of individual members in a putative class are aggregated.  28 U.S.C. § 1332(d)(6); *see*

4  *also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).

## III. DISCUSSION

The parties do not dispute, for purposes of this motion, that the prospective class is sufficiently numerous or that the parties are minimally diverse. *Dart Cherokee*, 574 U.S. at 84–85.[2] Rather, the disagreement centers on whether the amount in controversy exceeds $5 million.

### A. Overtime Claim

California Labor Code § 510 "requires employers to pay employees who work more than eight hours in a day *or* forty hours in a week at a rate of no less than one and a half times the regular rate of pay for an employee." *Attebery v. US Foods, Inc.*, No. 1:22-cv-1352 JLT-BAM, 2024 WL 863795, at *4 (E.D. Cal. Feb. 28, 2024) (citing Cal. Lab. Code § 510(a)) (emphasis added); *see also Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206 (Cal. 2011) ("For these reasons, we answer the first of the certified questions as follows: The California Labor Code does apply to overtime work performed in California for a California-based employer by out-of-state plaintiffs in the circumstances of this case, such that overtime pay is required for work in excess of eight hours per day *or* in excess of forty hours per week." (citation omitted) (emphasis added)); *Angeles v. US Airways, Inc.*, 790 F. App'x 878, 879 (9th Cir. 2020) (Mem.) ("Section 510 requires employers to compensate work at a rate of at least one and one-half times regular pay for any hours worked that exceed eight hours per day *or* forty hours per week." (emphasis added)). Plaintiff contends that "Defendant[] maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including overtime wages." (Doc. 1-1 at ¶ 15.)  "For example, Plaintiff and the Class were required to undergo COVID screening. After their shifts ended, Plaintiff and the Class typically continued to work after clocking out in order to finish printing

---

[2] Defendant admits that it is incorporated in and has its principal place of business in Minnesota (Doc. 13 at 11), and Plaintiff is a resident of California. Nor do the parties contest the size of the putative class. (See generally Docs. 11, 13, 15) and, indeed, Defendant has shown that the putative class is likely comprised of more than 300 employees. (See, e.g., Doc. 13-4 at ¶¶ 13, 25 (testifying that putative class is comprised of 1,166 individuals).)

1  reports and other tasks which was required to be completed before the next shift, off the clock and
2  uncompensated." (*Id.*)

3  In the motion to remand, Plaintiff challenges Defendant's calculations as to the amount in
4  controversy with respect to the overtime claim. (*See* Doc. 11.) In response, Defendant filed an
5  expert testimony, presenting various statistical data and calculations. Defendant's expert
6  determined that the putative class is comprised of 1,166 Class Members; that, collectively, they
7  have worked 600,805 shifts in total, with an average shift duration of 8.76 hours; and that Class
8  Members worked for 8 hours or more in 528,882 shifts. (Doc. 13-4 at ¶¶ 13, 25.) Plaintiff does
9  not dispute the veracity of these figures. Defendant's expert then assumed that Class Members
10 were not paid an hour of overtime work once per week (i.e., a violation rate of 20%). (*Id.* at
11 ¶ 26.) Finally, the expert calculated the unpaid overtime as follows: [Class Members worked 8 or
12 more hours in 528,882 shifts] X [assuming that Class Members had to work an hour of unpaid
13 overtime in 20% of the shifts] X [$35.37/hour overtime pay] = $3,741,332.49. (*Id.* at ¶ 27.)

14 Plaintiff argues that "Defendant's assumption that 100% of employees suffered overtime
15 violations at the frequency of at least one overtime per workweek is unreasonable." (Doc. 15 at
16 3.) To support this argument, Plaintiff points to the Central District of California's opinion in
17 *Calderon*, where the court explained that words like "'[p]olicy,' 'practice,' 'at times,' and 'some
18 of them,'" without more, "cannot reasonably be read as [(1)] 75% of employees, .5 hours of
19 overtime per week, [(2)] one missed meal period per week, and one missed rest period per week."
20 *Calderon v. Bio-Med. Applications of Mission Hills, Inc.*, No. 2:23-cv-03382-MEMF-MRWx,
21 2023 WL 6130524, at *6 (C.D. Cal. Sept. 18, 2023). The instant action, however, is
22 meaningfully different from *Calderon*.

23 First, and most crucially, in *Calderon*, the defendant provided no evidence as to how often
24 the class members had to work overtime; the defendant merely assumed that 75% of workers had
25 worked 0.5 hours of overtime per week. Here, Defendant's expert considered time records
26 showing that Class Members had, on average, worked 0.76 hours of overtime per shift.

27 Second, the complaint in *Calderon* used words like "at times" and "some of them,"
28 whereas, here, the Complaint also used words like "required" and "typically," words that imply a

6

far greater degree of frequency than "at times." Specifically, here, the Complaint alleges, among other things, that "Defendants maintained a policy and practice of not paying Plaintiff and the Class [Members] for all hours," that "Plaintiff and the Class [Members] were required to work off-the-clock," and that "Plaintiff and the Class [Members] typically continued to work after clocking out in order to finish printing reports and other tasks." (Doc. 1-1 at ¶ 15.) These words weigh in favor of a finding that Defendant's calculation using a 20% violation rate for the entirety of the relevant period was reasonable. Indeed, this Court previously found that when a plaintiff alleged a general pattern or practice of unpaid overtime, the presumption of a one-hour per week of missed overtime pay, the equivalent of a 20% violation rate, was reasonable. *Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-cv-00863-TLN-JDP, 2022 WL 597158, at *4 (E.D. Cal. Feb. 28, 2022); *Wicker v. ASC Profiles LLC*, No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271, at *2–3 (E.D. Cal. Mar. 30, 2021) (finding one overtime violation per week reasonable as a 20% violation rate based the plaintiff "alleging 'a pattern and practice' of 'Defendants fail[ing] to pay overtime wages to Plaintiff and other class member for all hours worked'") (alteration in original); *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020) (finding defendants' calculation based on a 20% violation rate was "a conservative estimate allowing for the possibility that not every putative class member worked overtime").

Having said that, it appears that the better way to calculate the amount in controversy with respect to the overtime claim[3] is to start with the fact that Class Members had worked 600,805 shifts in total with an average of 8.76 hours per shift; as such, Plaintiff and the Class Members had worked [600,805 shifts] X [on average, 0.76 hours of overtime per shift] = 456,611.8 hours of overtime. It is not reasonable to assume one hour of overtime per shift, paid or unpaid, when it is known that the average shift duration is 8.76 hours.

Next, the Court adopts Defendant's assumption that 20% of all overtime work was not

---

[3] This Court cannot simply apply $0 to a claim if it identifies a more reasonable assumption or calculation. *Jauregui v. Roadrunner Transp. Servs.*, Inc., 28 F.4th 989, 994 (9th Cir. 2022) ("In a circumstance like this, merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption.")

7

1  properly paid, such that Class Members should have received $35.37/hour for overtime pay.
2  Therefore, the Class Members worked for: [456,611.8 hours of overtime] X [assuming that Class
3  Members were not paid for their overtime work 20% of the times] X [$35.37/overtime hour] =
4  $3,230,071.87 unpaid overtime.  In sum, the Court finds that the following calculation to be more
5  appropriate: [600,805 shifts in total] X [0.76 hours of overtime on average] X [20% of which
6  were unpaid] X [$35.37/hour overtime pay] = $3,230,071.87 amount in controversy with respect
7  to the overtime claim. In sum, Court concludes, based on the evidence submitted thus far, that the
8  amount in controversy with respect to Plaintiff's overtime wage claim is $3,227,825.

### B. Meal and Rest Break Claims

Under California Labor Code §§ 226.7 and 516, employers must provide non-exempt employees working more than five hours in a shift with at least one uninterrupted meal break of at least 30 minutes. Employees working more than ten hours per day must be given a second thirty-minute meal period, unless they are working fewer than twelve hours, in which case the second meal period can likewise be waived. Employees are entitled to one additional hour at their regular pay rate for each workday in which a compliant meal period was not provided. Cal. Lab. Code § 226.7(b). In addition, employers must provide non-exempt employees with at least one ten-minute rest period for every four hours worked. Failure to provide the rest periods results in a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7(c).

Plaintiff alleges that Defendant had a "policy and practice" of "sometimes, but not always," withholding meal breaks during shifts where the class worked more than five hours. (*Id.* at ¶ 16.) He also alleges that "Plaintiff and the Class were sometimes required to work during their meal periods, leading to the failure to provide uninterrupted meal periods." (*Id.*) In opposing Plaintiff's motion to remand, Defendant's expert explained that he found that Class Members had worked 579,277 shifts with more than 5 hours recorded. (Doc. 13-4 at ¶ 18.) He then assumed that Class Members were not given their meal breaks in 20% of those shifts, even though they may have been entitled to one. (*Id.* at ¶ 19.) The calculation is thus: [579,277 shifts where Class Members would have been entitled to a meal break] X [assuming that Defendant

8

failed to provide meal break in 20% of those shifts] X [$23.58/hour average wage] = $2,841,419 for the meal break claim.

Defendant's expert further explained that he found that Class Members had worked 592,331 shifts with more than 3.5 hours recorded. (Doc. 13-4 at ¶ 22.) He then assumed that Class Members were not given their rest breaks in 20% of those shifts, even though they may have been entitled to one. (*Id*. at ¶ 19.) The calculation is thus: [592,331 shifts where Class Members were entitled to a rest break] X [assuming that Defendant failed to provide rest breaks in 20% of those shifts] X [$23.58/hour average wage] = $2,793,433 for Plaintiff's rest break claim.

Plaintiff challenges Defendant's assumption of 20% violation rate (or 1 violation per full time work week). Plaintiff first points to this Court's opinion in *Dunn* for the proposition that mere "allegation of systemic practice" is not enough to support an assumption that all putative Class Members had to work one hour of over time each week. (Doc. 11 at 28 (citing *Dunn v. SHC Servs., Inc.*, No. 1:21-CV-00744-NONE-SAB, 2021 WL 5122057, at *12 (E.D. Cal. Nov. 4, 2021)).) *Dunn*, however, involved a situation where the defendant alleged three violations per full time work week (equivalent to 60% violation rate). 2021 WL 5122057, at *14. In contrast, here, Defendant is assuming only a 20% violation rate. More crucially, the defendant in *Dunn* failed to take into account the "lengths of shifts warranting breaks," 2021 WL 5122057, at *14, whereas, here, Defendant has offered statistical data showing the exact number of shifts longer than 3.5, 5, and 8 hours.

Plaintiff also cites to *Avila*, an opinion from the Central District of California, for the proposition that "Defendant's reliance on the term 'regularly,' without more, does not establish the frequency of meal period violations." (Doc. 11 at 30-31 (discussing *Avila v. Con-Way Freight, Inc.*, No. SACV 11-01949-CJC(RNBx), 2012 WL 12887771, at *3 (C.D. Cal. May 18, 2012), *aff'd*, 588 F. App'x 560 (9th Cir. 2014)).) Plaintiff, however, overlooks the fact that the court in *Avila* applied *Lowdermilk*'s "legal certainty" standard for assessing whether the amount-in-controversy requirement is met under CAFA, 2012 WL 12887771, at *2–3 & n.4; *Lowdermilk*, however, has been overruled, *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th

9

Cir. 2013) ("The reasoning behind *Lowdermilk*'s imposition of the legal certainty standard is clearly irreconcilable with [the Supreme Court's decision in] *Standard Fire*. We hold that *Standard Fire* has so undermined the reasoning of our decision in *Lowdermilk* that the latter has been effectively overruled."). Rather, courts in the Ninth Circuit have found violation rates between 20% to 60% to be reasonable where, as here, a plaintiff alleges a defendant's "pattern and practice" caused the purported violations. *See, e.g., Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (noting that "violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation." (collecting cases)); *see also Sanchez v. The Ritz Carlton*, No. CV 15-3484 PSG (PJWx), 2015 WL 4919972, at *4 (C.D. Cal. Aug. 17, 2015) (comparing and collecting cases).

The Court finds the calculations offered by Defendant to be reasonable. *See Martinez v. Cencora, Inc.*, No. 24-cv-02663-MRA-SHK, 2025 WL 1443021, at *3 (C.D. Cal. May 20, 2025) (finding it reasonable for defendant to use all shifts lasting longer than five hours throughout the class period in calculating the meal period amount in controversy). Thus, the Court concludes that Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5 million.

### C. Waiting Time Penalties

Plaintiff asserts that he and putative Class Members "are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203." (Doc. 1-1 at ¶ 66.) In response, Defendant notes in its brief that "[t]here were approximately 335 employees terminated between April 4, 2020 and May 20, 2023." (Doc. 13 at 22 (citation omitted).) Defendant's expert then calculated the total potential waiting time penalties as follows: [335 terminated Class Members] X [8 hours/day] X [30 days] X [average pay for terminated employees] = $1,724,440. (Doc. 13-4 at ¶¶ 31–32.)

Plaintiff does not dispute that his waiting time claim is derivative of his other claims, in which he alleges a "pattern and practice" of minimum wage, overtime, meal break, and rest break violations. (Doc. 11 at 32.) Plaintiff argues, however, that "Defendant [] unreasonably assumes

10

1    that [(1)] all 335 terminated employees are eligible [(2)] for the maximum recovery of penalties

2    under Labor Code §[]203." (Doc. 15 at 5.)

3          In *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, the plaintiff brought her wage and hour

4    claims—including meal and rest break violations, overtime wages, minimum wages, and waiting

5    time penalties—on behalf of a class including "*all* current and former non-exempt employees of

6    Defendants within the State of California at any time commencing four (4) years preceding the

7    filing of [her] complaint up until the time that notice of the class action is provided to the class."

8    No. 2:23-cv-02802-MCS-JC, 2023 WL 524626, at *4 (C.D. Cal. Aug. 14, 2023) (emphasis in

9    original).  The court reasoned that a "former employee need only suffer *one* of the alleged

10   violations *at any time* during employment to bring a claim for failure to timely [pay] wages upon

11   termination." *Id.* at *4 (emphases added).  As such, the court found it "reasonable to assume that

12   . . . 100% of former employees suffered derivative waiting time violations." *Id.* (citation

13   omitted).  Here, too, Plaintiff tethered his waiting time penalties to the other claims for which he

14   alleged Defendant engaged in a "pattern and practice" of violations.  As a result, any terminated

15   employee need only suffer a single violation—whether meal break, rest break, overtime wages, *or*

16   minimum wages—to be entitled to the waiting time penalties, thereby justifying a 100% violation

17   rate.  *See id*.

18         Likewise, the purported wait-time violations remain ongoing—Plaintiff expressly that

19   Defendant "continue[s] to fail to pay terminated Class Members, without abatement, all wages

20   required to be paid" under the statute.  (Doc. 1-1 at ¶ 63.)  Thus, it is reasonable to assume the full

21   30-day penalty for the employees who departed more than 30 days before Plaintiff filed his

22   complaint,[4] especially when "there is nothing in the [c]omplaint to suggest that violations, once

23   they happened, were ever remedied." *See Chan v. Panera, LLC*, No. 23-cv-04194-JLS-AFM,

24   2023 WL 6367677, at *4 (C.D. Cal. Sept. 28, 2023).

25         In fact, it would be *unreasonable* to use an amount less than the 30-day maximum when,

26   as here, the Complaint (*see* Doc. 1-1 at ¶ 66), explicitly seeks statutory penalties up to a

---

[4] The number of employees separated from Defendant less than 30 days before Plaintiff filed his complaint is, presumably, quite small in relation to the total number of employees separated from Defendant over the span of 4 years before Plaintiff filed his complaint.

11

1  maximum of thirty days, *Ortiz v. Sheraton Op. LLC*, No. 24-cv-05104-JAK-JPR, 2024 WL

2  4625951, at *8 (C.D. Cal. Oct. 30, 2024) ("[U]sing an amount less than the 30-day penalty

3  maximum is unreasonable. The Complaint itself seeks penalties 'up to a maximum of thirty (30)

4  days.'"). Put differently, because Plaintiff is seeking the maximum wait time penalty, he is

5  foreclosed from arguing that the maximum penalty is not part of the total amount in dispute.

6      In sum, Defendant has shown by a preponderance of the evidence that the amount in

7  controversy is $3,227,825 for the overtime claim, $2,841,419 for the meal break claim,

8  $2,793,433 for the rest break claim, and $1,724,440 for the wait time claim, for a grand total of

9  $10,587,117, which is more than double than the $5 million amount-in-controversy requirement

10 under CAFA. As such, the Court need not consider Plaintiff's other claims, such as his minimum

11 wage and wage statement claims. Moreover, because the Court has diversity jurisdiction under

12 CAFA, the Court need not consider whether it has federal question jurisdiction—i.e., whether

13 Plaintiff's state law claims are preempted by Section 301 of the Labor Management Relations

14 Act. (*See* Doc. 11 at 12–24; Doc. 13 at 26–30.)

### III.    CONCLUSION

16     Based upon the foregoing, the Court **ORDERS** that Plaintiff's Motion to Remand the case

17 to Tulare County Superior Court, (Doc. 22), is **DENIED.**

IT IS SO ORDERED.

20     Dated: __**October 24, 2025**__                     *[signature]*
                                                         UNITED STATES DISTRICT JUDGE